## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FASAAD BOSKIE,

      Plaintiff,

      v.

NANCY THOMAS, *et al.*,

      Defendants.

No. 4:19-CV-01369

(Judge Brann)

## MEMORANDUM OPINION

### NOVEMBER 20, 2020

## I.    BACKGROUND

This *pro se* civil rights action pursuant to 42 U.S.C. § 1983 was filed by Fasaad Boskie, a state prisoner presently confined at the State Correctional Institution at Smithfield in Huntingdon, Pennsylvania.[1]  In the complaint, Plaintiff sought to allege an unspecified Eighth Amendment claim resulting from his confinement with a cellmate who had the flu and/or some unspecified illness and who allegedly contaminated Plaintiff's food and drink with blood and feces.  The Court reviewed the complaint and determined that Plaintiff had failed to state an Eighth Amendment claim, whether that claim be a medical claim, a failure to protect claim, or a conditions of confinement claim.[2]

---

[1]  *See* Doc. 1.
[2]  *See* Doc. 8.

Presently before the Court is Plaintiff's amended complaint as well as a motion for a preliminary injunction.[3]  In the amended complaint, Plaintiff explains that on February 7, 2018, he returned to his cell after working a shift in the kitchen when Defendants Unit Manager Nancy Thomas and Nurse Jane Doe informed Plaintiff that he would need to go on medical quarantine in his cell due to the flu.[4] Plaintiff questioned this decision, as he did not seem to have any symptoms of the flu, and was informed that since his cellmate had been diagnosed with the flu, Plaintiff likely also had it and would need to quarantine.[5]  Plaintiff believed this was unfair, as he had no symptoms of the flu, was not diagnosed with the flu, and would be exposed to the flu by being forced to quarantine with his cellmate.[6]  Despite voicing his objection, Plaintiff was required to quarantine in his cell with his sick cellmate.[7]

When Plaintiff entered his cell, he noticed some smeared blood in the cell and his cellmate, Roman Cook, trying to clean up the blood.[8]  Mr. Cook informed Plaintiff that he had woken up in his blood and that the medical department informed him that he had the flu.[9]

---

[3]   *See* Docs. 13, 23.
[4]   Doc. 13 at 5.
[5]   *Id.*
[6]   *Id.*
[7]   *Id.*
[8]   *Id.*
[9]   *Id.*  It is unclear to the Court whether Mr. Cook's loss of blood is related to the flu or some other ailment.

The following morning Plaintiff observed Mr. Cook asleep on his bed with blood "pouring from his nose and mouth."[10]  Plaintiff left his cell and demanded to be moved to another cell.[11]  Defendants Thomas and Doe told him that he needed to stay in his cell.[12]  Plaintiff refused, alleging that his cellmate must have something more serious than the flu.[13]  Despite his objection, Plaintiff was forced to return to his cell and to stay there for three days.[14]  According to Plaintiff, every morning after he woke up, he would observe blood around his cellmate.[15]  Throughout this time, Mr. Cook became agitated and threatened to harm himself and others.[16]  Mr. Cook also informed Plaintiff that he put something special in Plaintiff's food.[17]

At some point, Plaintiff spoke with non-party Sergeant John Doe and requested a cell change due to his cellmate's behavior.[18]  Sergeant Doe observed Mr. Cook's behavior and moved Plaintiff to a new cell.[19]  The next morning, however, Defendant Thomas required Plaintiff to return to his regular cell with Mr. Cook.[20]  Plaintiff informed his family of the situation with his cellmate, and his family called

---

[10] *Id.*
[11] *Id.* at 6.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*

the officials at SCI Smithfield, after which Plaintiff was permanently moved to a new cell.[21]

Plaintiff then began to feel sick "with strange internal changes" and "major headaches."[22]  Plaintiff became concerned that his former cellmate had possibly poisoned him.[23]  Plaintiff repeatedly sought medical attention.  Specifically, on March 27, 2018, Plaintiff spoke with his doctor, non-party Dr. Kelly, about his flu like symptoms and swollen glands.[24]  Dr. Kelly directed Defendant Nurse Jackie Grove to do further testing on Plaintiff.[25]  Blood and urine tests were conducted, and the urine test was positive for a urinary tract infection.[26]  Plaintiff was prescribed an antibiotic for two weeks.[27]

Plaintiff alleges that he took the prescribed medication but that it did not help his pain or unspecified internal problems.[28]  Plaintiff returned to the medical department on a few occasions, explaining to the medical staff that his sickness was "attacking his brain and spine."[29]  He also requested a meningitis test and asked to be hospitalized for further testing, but both requests were denied.[30]  Plaintiff alleges

---

[21]  *Id.* at 7.
[22]  *Id.*
[23]  *Id.*
[24]  *Id.*
[25]  *Id.*
[26]  *Id.*
[27]  *Id.* at 8.
[28]  *Id.*
[29]  *Id.*
[30]  *Id.*

that he has notified the Superintendent, Deputy Superintendent, Health Administrator, and Medical (presumably, the medical department) of his ongoing medical problems.[31]

In the motion for a preliminary injunction, Plaintiff alleges that his constitutional rights were violated when he was placed in a ten-day medical lock-in with his cellmate, who he alleges was mentally ill and bleeding for an unknown reason, and that since that time, Plaintiff has been undergoing a great deal of pain and is in need of medical treatment.[32]  According to Plaintiff, he has an unknown disease and is in need of immediate medical attention.

## II.     DISCUSSION

Sections 1915(e)(2) and 1915A require a court to review complaints prior to service in cases in which a plaintiff is proceeding *in forma pauperis* and in which a plaintiff is incarcerated.[33]  The Court must *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because Plaintiff is proceeding *in forma pauperis* and is also incarcerated.

---

[31]  *Id.*
[32]  *See* Docs. 23 (motion), 25 (brief in support).
[33]  *See* 28 U.S.C. §§ 1915(e)(2), 1915A.

To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.[34] "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[35] "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[36] In determining whether a complaint states a plausible claim for relief, this Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor."[37]

Plaintiff has brought her claim pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States

---

[34] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[35] *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[36] *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[37] *Alpizar-Fallas v. Favero*, 908 F.3d 910, 914 (3d Cir. 2018).

[and] that the alleged deprivation was committed by a person acting under color of state law."[38]  In the amended complaint, Plaintiff specifies that he is seeking to allege a medical claim and a failure to protect claim under the Eight Amendment.

To state an Eighth Amendment claim alleging inadequate medical treatment, a prisoner "must make (1) a subjective showing that the defendants were deliberately indifferent to his or her medical needs and (2) an objective showing that those needs were serious."[39]  "Because mere disagreement as to the proper medical treatment does not support a claim of an eighth amendment violation, when medical care is provided, [courts] presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."[40]  "'[D]eliberate indifference entails something more than mere negligence' and is a subjective standard that requires the official to both 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and to 'also draw the inference.'"[41]

As the Court previously determined when it reviewed the original complaint, even under the liberal pleading standard afforded to *pro se* litigants, the facts alleged in the amended complaint are insufficient to establish liability on the part of the defendants.  Plaintiff does not allege a serious medical condition—he only alludes

---

[38]  *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

[39]  *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (brackets and internal quotation marks omitted).

[40]  *Id.* at 535 (citation and internal quotation marks omitted).

[41]  *Id.* at 538 (quoting *Farmer*, 511 U.S. at 835-37).

in conclusory fashion to "internal issues" and headaches.  He admits that he has been to the medical department, where he received both blood and urinary tests, and that when he was diagnosed with a urinary tract infect, he received treatment in the form of antibiotics.  There is no allegation or inference that the care Plaintiff received violates the standards of professional care such that it violates the Eighth Amendment.  And, because Plaintiff did receive care and treatment, the Court presumes that the treatment given was proper.  At best, Plaintiff alleges a disagreement over the medical procedures and treatment he should receive, which fails to state a claim for medical deliberate indifference under the Eighth Amendment.

Next, as to Plaintiff's failure to protect claim, "the Eighth Amendment's Cruel and Unusual Punishments Clause imposes on prison officials 'a duty to protect prisoners from violence at the hands of other prisoners.'"[42]  "Still, not 'every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety.'"[43]

> To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk

---

[42] *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).

[43] *Id.* at 367 (quoting *Farmer*, 511 U.S. at 834).

to his health and safety, and (3) the official's deliberate indifference caused him harm.[44]

"Deliberate indifference in this context is a subjective standard: the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety."[45]

Again, much like the allegations of the original complaint, Plaintiff has failed to allege a failure to protect claim against the Defendants. Notably, no allegations support the conclusion or inference that Defendants knew or should have known that Plaintiff's cellmate was a threat to him or that he might contaminate Plaintiff's food or drink or that they were deliberately indifferent to any such risk. As such, the Eighth Amendment claims will be dismissed without prejudice. In light of Plaintiff's *pro se* status and because it is possible that Plaintiff may be able to cure his pleading defects, the Court will provide Plaintiff with a final opportunity to amend his complaint.

Finally, to the extent that Plaintiff alleges a state law claim for negligent failure to protect, and because all federal claims are dismissed from this action, the Court declines to exercise supplemental jurisdiction over any state law claims. Should Plaintiff file a second amended complaint that adequately alleges an Eighth

---

[44] *Id.*
[45] *Id.*

Amendment claim, the Court would permit any adequately pled state law claims to proceed in turn.

Turning to the motion for a preliminary injunction, Plaintiff must establish (1) the reasonable probability of eventual success in the litigation, and (2) irreparably injury should the injunction not issue, and the Court should also consider (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.[46]  Here, it is clear that Plaintiff could not be successful in the litigation as he has failed to state a claim upon which relief may be granted.  As such, the motion for a preliminary injunction will also be denied without prejudice.

## III.   CONCLUSION

For the foregoing reasons, the Court will dismiss the amended complaint without prejudice for failure to state a claim upon which relief may be granted, with leave to amend granted, and also dismiss without prejudice the motion for a preliminary injunction.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[46]  *See Bennington Foods LLC v. St. Croix Renaissance Group, LLP*, 528 F.3d 176 (3rd Cir. 2008).