IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FASAAD BOSKIE, | No. 4:19-CV-01369 |
| Plaintiff, | (Judge Brann) |
| v. | |
| NANCY THOMAS, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

APRIL 13, 2020

## I.　BACKGROUND

This *pro se* civil rights action pursuant to 42 U.S.C. § 1983 was filed by Fasaad Boskie, a state prisoner presently confined at the State Correctional Institution at Smithfield in Huntingdon, Pennsylvania.[1]  In the complaint, Plaintiff sought to allege an unspecified Eighth Amendment claim resulting from his confinement with a cellmate who had the flu and/or some unspecified illness and who allegedly contaminated Plaintiff's food and drink.  The Court reviewed the complaint and determined that Plaintiff had failed to state an Eighth Amendment claim, whether that claim be a medical claim, a failure to protect claim, or a

---

[1]　*See* Doc. 1.

conditions of confinement claim.[2]  The Court granted Plaintiff leave to file an amended complaint to remedy his pleading defects.[3]

In his first amended complaint, Plaintiff alleged that on February 7, 2018, he returned to his cell after working a shift in the kitchen when Defendants Unit Manager Nancy Thomas and Nurse Jane Doe informed Plaintiff that he would need to go on medical quarantine in his cell due to the flu.[4]  Plaintiff questioned this decision, as he did not seem to have any symptoms of the flu; he was informed that since his cellmate had been diagnosed with the flu, Plaintiff likely also had it and would need to quarantine.[5]  Plaintiff believed this was unfair, as he had no symptoms of the flu, was not diagnosed with the flu, and would now be exposed to the flu by being forced to quarantine with his cellmate.[6]  Despite voicing his objection, Plaintiff was required to quarantine in his cell with his sick cellmate.[7]

When Plaintiff entered his cell, he noticed some smeared blood in the cell and his cellmate, Roman Cook, trying to clean up his blood.[8]  Mr. Cook informed Plaintiff that he had woken up in his blood and that the medical department informed him that he had the flu.[9]  The following morning Plaintiff observed Mr. Cook asleep

---

[2] *See* Doc. 8.
[3] *See id.*
[4] Doc. 13 at 5.
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*

on his bed with blood "pouring from his nose and mouth."[10] Plaintiff left his cell and demanded that he be moved to another cell.[11] Defendants Thomas and Doe told him that he needed to stay in his cell.[12] Plaintiff refused, alleging that his cellmate must have something more serious than the flu.[13] Despite his objection, Plaintiff was forced to return to his cell and to stay there for three days.[14] According to Plaintiff, every morning after he woke up, he would observe blood around his cellmate.[15] Throughout this time, Mr. Cook became agitated and threatened to harm himself and others.[16] Mr. Cook also informed Plaintiff that he put something special in Plaintiff's food.[17]

At some point, Plaintiff spoke with non-party Sergeant John Doe and requested a cell change due to his cellmate's behavior.[18] Sergeant Doe observed Mr. Cook's behavior and moved Plaintiff to a new cell.[19] The next morning, however, Defendant Thomas required Plaintiff to return to his regular cell with Mr. Cook.[20] Plaintiff informed his family of the situation with his cellmate, and his family called

---

[10] *Id.*
[11] *Id.* at 6.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*

officials at SCI Smithfield, after which Plaintiff was permanently moved to a new cell.[21]

Plaintiff then began to feel sick "with strange internal changes" and "major headaches."[22] Plaintiff became concerned that his former cellmate had possibly poisoned him.[23] Plaintiff repeatedly sought medical attention. Specifically, on March 27, 2018, Plaintiff spoke with his doctor, non-party Dr. Kelly, about his flu like symptoms and swollen glands.[24] Dr. Kelly directed Defendant Nurse Jackie Grove to do further testing on Plaintiff.[25] Blood and urine tests were conducted, and the urine test was positive for a urinary tract infection.[26] Plaintiff was prescribed an antibiotic for two weeks.[27] Plaintiff alleges that he took the prescribed medication but that it did not help his pain or unspecified internal problems.[28] Plaintiff returned to the medical department on a few occasions, explaining to the medical staff that his sickness was "attacking his brain and spine."[29] He also requested a meningitis test and to be hospitalized for further testing; both requests were denied.[30]

---

[21]  *Id.* at 7.
[22]  *Id.*
[23]  *Id.*
[24]  *Id.*
[25]  *Id.*
[26]  *Id.*
[27]  *Id.* at 8.
[28]  *Id.*
[29]  *Id.*
[30]  *Id.*

In his second amended complaint, Plaintiff alleges that Defendant Thomas forced Plaintiff to quarantine with his cellmate for ten days, and that the conditions in his cell were unsafe.[31] He also alleges that she forced him to return to his cell after he was initially moved to another cell by a non-party corrections officer.[32] Plaintiff also alleges that Defendant Grove, a disease specialist, was the one who diagnosed his roommate with the flu and knew of his cellmate's history of mental illness.[33]

Plaintiff also alleges that he submitted numerous sick call slips, and that Defendant Jennifer Pierre examined him and determined that there was nothing wrong with him.[34] Plaintiff alleges that she determined that nothing was wrong with him in order to discourage him from seeking further medical care.[35]

Finally, Plaintiff alleges that he advised Defendants Luther, Wakefield, and the Health Administrator of his issues through grievances, however none took appropriate steps to ensure that he received medical care.[36]

## II. STANDARD OF REVIEW

Sections 1915(e)(2) and 1915A require a court to review complaints prior to service in cases in which a plaintiff is proceeding *in forma pauperis* and in which a

---

[31] Doc. 34 at 1.
[32] *Id.*
[33] *Id.*
[34] *Id.* at 2.
[35] *Id.*
[36] *Id.*

plaintiff is incarcerated.[37]  The Court must *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because Plaintiff is proceeding *in forma pauperis* and is also incarcerated.

To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.[38]  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[39]  "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[40]  In determining whether a complaint states a plausible claim for relief, this Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor."[41]

## III.  DISCUSSION

As to Plaintiff's Eighth Amendment medical claim, the Court concluded in its memorandum dismissing the first amended complaint that:

---

[37] *See* 28 U.S.C. §§ 1915(e)(2), 1915A.
[38] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).
[39] *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).
[40] *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[41] *Alpizar-Fallas v. Favero*, 908 F.3d 910, 914 (3d Cir. 2018).

>As the Court previously determined when it reviewed the original complaint, even under the liberal pleading standard afforded to *pro se* litigants, the facts alleged in the amended complaint are insufficient to establish liability on the part of the defendants.  Plaintiff does not allege a serious medical condition—he only alludes in conclusory fashion to "internal issues" and headaches.  He admits that he has been to the medical department, where he received both blood and urinary tests, and that when he was diagnosed with a urinary tract infect, he received treatment in the form of antibiotics.  There is no allegation or inference that the care Plaintiff received violates the standards of professional care such that it violates the Eighth Amendment.  And, because Plaintiff did receive care and treatment, the Court presumes that the treatment given was proper.  At best, Plaintiff alleges a disagreement over the medical procedures and treatment he should receive, which fails to state a claim for medical deliberate indifference under the Eighth Amendment.[42]

Plaintiff's allegations in the second amended complaint merely restate his prior allegations made in both his complaint and first amended complaint.  Plaintiff received numerous medical tests and care as well as a prescription when he was found to have a urinary tract infection.  Further, despite Plaintiff's allegation, it would not be a reasonable inference to conclude that Defendant Pierre advised Plaintiff that there was nothing wrong with him because she wanted to deter him from seeking further medical treatment in light of the numerous tests and examinations that Plaintiff received.  As such, the Court will dismiss the Eighth Amendment medical indifference claim.

---

[42] Doc. 27 at 7-8.

> As to Plaintiff's failure to protect claim, the Court previously concluded that:
>
>> Again, much like the allegations of the original complaint, Plaintiff has failed to allege a failure to protect claim against the Defendants. Notably, no allegations support the conclusion or inference that Defendants knew or should have known that Plaintiff's cellmate was a threat to him or that he might contaminate Plaintiff's food or drink or that they were deliberately indifferent to any such risk. As such, the Eighth Amendment claims will be dismissed without prejudice.[43]

Plaintiff fails to allege any additional facts in support of his Eighth Amendment failure to protect claim beyond those alleged in his first amended complaint and previously considered by the Court. This claim remains deficient, and the Court will dismiss it.

Finally, Plaintiff alleges for the first time that Defendants Luther, Wakefield, and the Health Care Administrator failed to adequately respond to his grievances about his cellmate. These Defendants are not otherwise mentioned in the factual allegations of the second amended complaint. "A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'"[44] Notably, a prisoner's allegation that prison officials and administrators responded inappropriately or failed to respond to a prisoner's complaint or an official grievance does not establish that the officials and

---

[43] *Id.* at 9.
[44] *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

administrators were involved in the underlying allegedly unconstitutional conduct.[45] Further, a supervisory official has no affirmative constitutional duty to supervise or discipline subordinates so as to prevent the violation of constitutional rights.[46] The Court must dismiss these Defendants as their involvement is limited to receiving or responding to grievances, and thus Plaintiff has failed to allege their personal involvement in his Eighth Amendment claims.

Generally, "plaintiffs who file complaints subject to dismissal under FED R. CIV. P. 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile." Plaintiff has now had two opportunities to amend his complaint, and he has still failed to remedy his pleading defects. As such, the Court finds that it would be futile to permit Plaintiff yet another opportunity to amend his second amended complaint.

---

[45] *See Rode*, 845 F.2d at 1207-08 (concluding that review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Pressley v. Beard*, 266 F. App'x 216 (3d Cir. 2008) (prison officials cannot be held liable solely based on their failure to take corrective action when grievances or investigations were referred to them); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006); *Croom v. Wagner*, No. 06-1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); *Ramos v. Pennsylvania Dep't of Corrs.*, No. 06-cv-1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement).

[46] *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990).

## IV. CONCLUSION

For the foregoing reasons, this Court will dismiss the second amended complaint with prejudice for failure to state a claim upon which relief may be granted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge